UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| ANI GERAGOSIAN, | No. |
| Plaintiff, | |
| vs. | COMPLAINT FOR DAMAGES |
| THE CITY OF SEATTLE, and MAMI HARA, in her official and individual capacity, | JURY DEMAND |
| Defendants. | |

## I.  NATURE OF THE CASE

1.      A government employee has a First Amendment right to speak as a private citizen on matters of public concern without being retaliated against by her employer. Plaintiff believes that prolonged remote learning is detrimental to the welfare of students.  Six to ten months prior to ever working for the City of Seattle, Plaintiff posted several criticisms on Facebook regarding school closures during the Pandemic.  Defendants the City of Seattle and Mami Hara discovered these old posts and promptly terminated Plaintiff – even though Plaintiff's position with the City had no connection to schools.  Plaintiff brings this action to vindicate her rights, and she alleges as follows:

## II.  PARTIES

2.      Plaintiff Ani Geragosian ("Plaintiff") is an individual residing in King County,

COMPLAINT FOR DAMAGES – Page 1

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

1    Washington.

2         3.      Defendant the City of Seattle ("the City") is a municipal corporation organized

3    under the laws of the State of Washington.

4         4.      At all relevant times, Defendant Mami Hara ("Hara") was the CEO and

5    General Manager of Seattle Public Utilities.  Upon information and belief, Defendant Hara

6    resides in King County, Washington.

7                         **III.  JURISDICTION AND VENUE**

8         5.      This action is brought pursuant to 42 U.S.C. § 1983 for the violation of

9    Plaintiff's rights under the First Amendment to the United States Constitution.

10        6.      Plaintiff also seeks a declaration under 28 U.S.C. § 2201 that her First

11   Amendment rights were violated.

12        7.      This Court has subject matter jurisdiction over Plaintiff's federal law claims

13   pursuant to 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over Plaintiff's state

14   law claims pursuant to 28 U.S.C. § 1367.

15        8.      Venue is proper in the Western District of Washington pursuant to 28 U.S.C. §

16   1391 because Defendants reside in this judicial district and the events giving rise to Plaintiff's

17   claims occurred in this judicial district.

18        9.      On October 18, 2022, Plaintiff filed a notice of tort claim with the City of

19   Seattle.

20                         **IV.  FACTUAL BACKGROUND**

21        10.     On August 23, 2021, Seattle Public Utilities offered Plaintiff the position of

22   Human Resources Director (Executive 2).  Seattle Public Utilities is a utility agency for the

23   City of Seattle, providing water, sewer, and garbage services.

24        11.     Plaintiff has worked in human resources for more than 15 years.  Plaintiff had

25   been working as the Vice President of Human Resources for a real estate investment firm

26

COMPLAINT FOR DAMAGES – Page 2                    **MBE LAW GROUP PLLC**
                                                  1700 Seventh Ave, Suite 2100
                                                  Seattle, Washington 98101
                                                  Tel: 206.400.7722

1    since 2018.  She left that position – a position she enjoyed greatly – for the opportunity to

2    oversee Human Resources at Seattle Public Utilities.

3         12.    Plaintiff went through a background check and numerous interviews prior to

4    being hired, including an interview with Defendant Hara.  Plaintiff was selected for the

5    position because she was well qualified based on her experience, credentials, and interview

6    answers.

7         13.    Seattle Public Utilities sent out an agency-wide email to all of its employees on

8    September 13, 2021 announcing Plaintiff's hiring.

9         14.    Plaintiff started work at Seattle Public Utilities on September 15, 2021.

10        15.    Defendant Hara was Plaintiff's supervisor at Seattle Public Utilities.

11        16.    On Plaintiff's first day of work, Defendant Hara informed Plaintiff that

12   someone – Plaintiff was not told who – was concerned by some of Plaintiff's old Facebook

13   posts.

14        17.    Based on documents produced in response to public records requests to the

15   City, the Facebook posts at issue appear to span from approximately December 2020 to

16   March 2021 – six to ten months prior to Plaintiff starting work at Seattle Public Utilities.

17        18.    Plaintiff does not know what prompted someone to seek out her Facebook

18   profile and comb through her months-old posts.

19        19.    Plaintiff was speaking as a private citizen and not in her capacity as a public

20   employee when she made the Facebook posts at issue.

21        20.    All of the Facebook posts at issue were made prior to Plaintiff's employment

22   with Seattle Public Utilities.

23        21.    Plaintiff's Facebook profile did not identify the City of Seattle or Seattle

24   Public Utilities as her employer.

25        22.    The posts at issue relate to school closures and remote learning for students

26   during Covid.

COMPLAINT FOR DAMAGES – Page 3                    **MBE Law Group PLLC**
                                                  1700 Seventh Ave, Suite 2100
                                                  Seattle, Washington 98101
                                                  Tel: 206.400.7722

1    23.    Covid school closures have been the subject of great public debate.  The New
2    York Times Morning Newsletter on January 4, 2022 described some of that public debate and
3    noted that "[c]hildren fell far behind in school during the first year of the pandemic and have
4    not caught up."  The same article noted that "[m]any children and teenagers are experiencing
5    mental health problems" and that "[s]uicide attempts have risen" among adolescents.  The
6    article contended that certain school restrictions were necessary and unavoidable "in the
7    spring of 2020, when nearly all of society shut down" but pointed out that "the approach has
8    been less defensible for the past year and a half as we have learned more about Covid and the
9    extent of children's suffering from pandemic restrictions."

10    24.    Plaintiff had similar concerns about the negative effects of prolonged school
11    closures on student welfare, and she made several Facebook comments on the subject.  For
12    example, in December 2020, Plaintiff posted a link to an article titled "Number of failing
13    Washington students rise, concerning state superintendent."  Plaintiff posted the comment,
14    "Will get wors[e].. schools should be open."  In early March 2021, Plaintiff posted a link to an
15    article about the Governor of Oregon mandating in person learning for students.  In that post,
16    Plaintiff criticized the Governor of Washington for not acting sooner to do the same.  Shortly
17    thereafter, the Governor of Washington did in fact require schools to provide at least 30
18    percent in person learning – recognizing the validity of concerns about the educational and
19    mental health effects of prolonged remote learning.

20    25.    Defendants, however, believe that there is no legitimate debate over school
21    closures and that criticizing school closures or questioning the health tradeoffs of such
22    closures is a character defect that warrants termination from employment.

23    26.    Defendants discovered Plaintiff's old Facebook posts advocating for schools to
24    reopen and immediately determined that Plaintiff's viewpoint disqualified her from being
25    employed by the City of Seattle – even in a position that had no connection to schools.

26

COMPLAINT FOR DAMAGES – Page 4

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

27.     The day after discovering Plaintiff's Facebook posts, Defendants asked Plaintiff to resign.

28.     Plaintiff explained to Defendants verbally and in writing that she takes Covid very seriously and that she believes strongly in Covid safety.  Plaintiff assured Defendants that she follows state and federal safety guidelines for Covid and would continue to do so while working at Seattle Public Utilities.

29.     Plaintiff also told Defendants that she believes in Covid vaccination.  Plaintiff herself is vaccinated.  Defendants were aware that Plaintiff is vaccinated.

30.     Plaintiff explained to Defendants that she had advocated for the safe reopening of schools because she was concerned about student welfare.  Plaintiff explained to Defendants that advocating for the reopening of schools does not mean that she disagrees with or would not follow Covid safety protocols at Seattle Public Utilities.

31.     Plaintiff's job duties at Seattle Public Utilities had no connection to Covid policies for schools.  Plaintiff was not in a position where she would be making decisions about remote learning.  Nobody at Seattle Public Utilities was making or enforcing policy decisions about remote learning at schools.

32.     Plaintiff offered to make her Facebook posts private so that employees at Seattle Public Utilities would not see them.  Plaintiff informed Defendants in writing on September 16th that she had already deactivated her Facebook.  Defendants did not accept this simple solution.

33.     Plaintiff refused to resign, and Defendants terminated her on September 17, 2021.

34.     Defendant Hara was the decisionmaker for Plaintiff's termination.  Although others may have had input into the decision, the termination decision was ultimately made by Defendant Hara as the CEO and General Manager of Seattle Public Utilities.

COMPLAINT FOR DAMAGES – Page 5

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

35.     Defendant Hara's decision to terminate Plaintiff was not reviewed by any higher authority at the City.   Defendant Hara was the department head for Seattle Public Utilities, and as such, she had final decision-making authority over hiring and termination decisions for the Human Resources Director (Executive 2) position at Seattle Public Utilities.

36.     Between September 15, 2021 and September 17, 2021, Defendant Hara had multiple communications with the Seattle City Attorney's Office about Plaintiff.

37.     Upon information and belief, no employees in the Seattle City Attorney's Office acted as decisionmakers for Plaintiff's termination.

38.     Defendant Hara emailed Plaintiff the termination decision and signed the termination letter to Plaintiff.

39.     The termination letter expressly states that Plaintiff's Facebook posts are the cause of the termination.  The letter states in pertinent part that Plaintiff's "ability to instill employee confidence in your commitment to public health and safety mandates has been irreparably damaged by your posts criticizing those mandates."

40.     Plaintiff's posts were about schools.  None of Plaintiff's Facebook posts criticized any Covid mandates that applied to Seattle Public Utilities, and none of her posts criticized any Covid protocols used by Seattle Public Utilities.

41.     Plaintiff's posts did not criticize workplace vaccine mandates.

42.     Plaintiff's posts did not criticize workplace mask mandates.

43.     Plaintiff's posts did not criticize workplace social distancing requirements.

44.     Plaintiff's posts did not criticize remote work policies at Seattle Public Utilities.

45.     Defendants had no basis for determining that Plaintiff was not committed to following public health and safety mandates that apply to Seattle Public Utilities.

COMPLAINT FOR DAMAGES – Page 6

46.     Defendants did not identify – in the termination letter or in any other communications with Plaintiff – any specific public health mandate they were concerned that Plaintiff was not committed to following.

47.     Defendants terminated Plaintiff for criticisms of school closures that were no longer even in effect at the time of her termination.  Seattle Public Schools had already reopened to in-person instruction at the time of Plaintiff's termination.  The local debate over school closures had been resolved in favor of reopening.

48.     Defendants had no basis to believe that Plaintiff's posts were widely seen by the public.  The posts were not reported in the press, nor did they go viral online.

49.     Defendants did not receive any complaints from the public about Plaintiff's Facebook posts.

50.     Defendants had no basis to believe that Plaintiff's Facebook posts were widely seen by employees at Seattle Public Utilities.

51.     Plaintiff issued a public records request to the City of Seattle for documents relating to her Facebook posts.  The City of Seattle has not produced any documents constituting an employee complaint about the posts, referring to the name of any complainant, or describing the substance of any employee complaints about the posts.

52.     Plaintiff's offer to make her Facebook posts private would have remedied any concern about how employees would perceive the posts.  Plaintiff only worked at Seattle Public Utilities for three days, and she made her Facebook account private by her second day at work.  It is difficult to imagine that in that short span of time more than one employee sought out Plaintiff's personal Facebook profile and combed through her posts from six to ten months prior.

53.     Even if an employee did complain about Plaintiff's posts, that employee's disagreement with Plaintiff's viewpoint does not outweigh Plaintiff's First Amendment right to speak on a matter of public importance.  Protected speech does not give way to a heckler's

MBE Law Group PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

veto, and the First Amendment rights of government employees would be rendered meaningless if those rights only permitted employees to express viewpoints that every other employee agreed with.

54.     Plaintiff's posts did not cause any actual disruption or interference with the operations of Seattle Public Utilities.

55.     Defendant Hara wrote in the termination letter that "[h]ad we been aware of the Facebook posts during the recruitment and hiring process, we would not have extended an employment offer to you."  In other words, even if no employee ever saw or complained about the Facebook posts, Defendant Hara still would have retaliated against Plaintiff for the content of her speech.

56.     Defendants' termination of Plaintiff was motivated by the viewpoint expressed in Plaintiff's Facebook posts.  Defendants were determined to punish Plaintiff for her viewpoint regardless of whether the posts created any disruption.

57.     Covid restrictions, the Pandemic, and public education are all matters of public concern.  Plaintiff was terminated for speech on matters of public concern as opposed to speech on purely personal topics.

58.     It is the policy of Seattle Public Utilities that any person who has ever publicly disagreed with Covid school closures is disqualified from working in a management or supervisory level position with Seattle Public Utilities.

59.     Defendants' wrongful actions have caused Plaintiff significant financial and emotional harm.

## V.  FIRST CAUSE OF ACTION

### VIOLATION OF FIRST AMENDMENT (42 U.S.C. § 1983)

### (AGAINST THE CITY OF SEATTLE AND MAMI HARA)

60.     Plaintiff re-alleges and hereby incorporates paragraphs 1 through 59.

61.     Defendants' above-described conduct deprived Plaintiff of her free speech

COMPLAINT FOR DAMAGES – Page 8

rights under the First Amendment to the United States Constitution.

62.     Defendants terminated Plaintiff because of her Facebook posts.  Plaintiff's posts were on a topic of public concern, and she was speaking as a private citizen when she made the posts rather than in her official capacity as an employee of Seattle Public Utilities.

63.     Defendant Hara acted under color of law when terminating Plaintiff. Defendant Hara used her power and authority as a government actor to engage in viewpoint discrimination.

64.     Defendant Hara had final policymaker authority with respect to the decision to terminate Plaintiff.  As the head of Seattle Public Utilities, Defendant Hara's termination of Plaintiff constitutes official policy.

65.     Because Defendant Hara had final policymaker authority when terminating Plaintiff, the City of Seattle is subject to municipal liability for the violation of Plaintiff's First Amendment rights.

66.     Defendants were on fair notice that the decision to terminate Plaintiff violates established law.

67.     Defendants' violation of the First Amendment has caused Plaintiff to suffer damages, including emotional distress and lost wages and benefits, in amounts to be determined at trial.

68.     Defendants acted with reckless disregard, malice, and/or complete indifference to Plaintiff's First Amendment rights.  Defendants knew that Plaintiff's speech was made as a private citizen on a matter of public concern, triggering the First Amendment protections for public employees.  Defendants knew that any hypothetical risk of disruption from Plaintiff's posts could be remedied by making the posts private as Plaintiff proposed.  Defendants' refusal to accept this remedy demonstrates animus rather than any legitimate employer interest.  Plaintiff seeks punitive damages against Defendant Hara for the deprivation of Plaintiff's rights.

MBE Law Group PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

## VI.  SECOND CAUSE OF ACTION

## VIOLATION OF SEATTLE MUNICIPAL CODE

## (AGAINST THE CITY OF SEATTLE AND MAMI HARA)

69.     Plaintiff re-alleges and hereby incorporates paragraphs 1 through 68.

70.     The City of Seattle terminated Plaintiff for her political ideology in violation of Seattle Municipal Code ("SMC") Ch.14.04 *et seq.*

71.     SMC 14.04.040 prohibits employment discrimination and retaliation based on "political ideology" and broadly defines "political ideology" to mean "any idea or belief…relating to the purpose, conduct, organization, function, or basis of government and related institutions and activities, whether or not characteristic of any political party or group."

72.     SMC 14.04.185 states that "[i]t is the intent of The City of Seattle…to provide private judicial remedies for violations of this chapter that are as expansive as possible."

73.     SMC 14.04.185 provides for a private right of action for political ideology discrimination with the same remedies that exist under the Washington Law Against Discrimination, RCW 49.60 *et seq.* ("the WLAD").

74.     Under the WLAD, individual supervisors and managers are personally liable for their own discriminatory or retaliatory acts.   SMC 14.04.030 also provides that an "employer" includes "any person acting in the interest of such employer."  Thus, Defendant Hara is subject to personal liability for her violation of SMC 14.04 *et seq.*

75.     As a result of Defendants' violation of SMC 14.04 *et seq.*, Plaintiff has suffered damages, including emotional distress, and lost wages and benefits, in amounts to be determined at trial.

## VII.  THIRD CAUSE OF ACTION

## WRONGFUL TERMINATION IN VIOLATION OF PUBLIC POLICY

## (AGAINST THE CITY OF SEATTLE)

COMPLAINT FOR DAMAGES – Page 10

MBE Law Group PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

76.    Plaintiff re-alleges and hereby incorporates paragraphs 1 through 75.

77.    As described above, the City's termination of Plaintiff constitutes a wrongful termination in violation of public policy, including public policies relating to the exercise of free speech and public policies relating to the welfare of students.

78.    As a result of Plaintiff's wrongful discharge, Plaintiff has suffered damages, including emotional distress, and lost wages and benefits, in amounts to be determined at trial.

## VIII.  DEMAND FOR JURY

79.    Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury as to all issues so triable in this action

## IX.  PRAYER FOR RELIEF

Plaintiff Ani Geragosian requests that the Court enter judgment against Defendants the City of Seattle and Mami Hara for the following:

a.    Damages for back pay, front pay, and lost past and future benefits in amounts to be determined at trial;

b.    Damages for emotional distress and harm, including but not limited to humiliation, embarrassment, personal indignity, loss of enjoyment of life, fear, anxiety, and anguish, in an amount to be determined at trial;

c.    Punitive damages against Defendant Hara to the maximum extent permitted by law;

d.    A declaration that Defendants violated the First Amendment by terminating Plaintiff for the exercise of her free speech rights;

e.    Prejudgment and post judgment interest;

f.    Compensation for the tax consequences associated with a damages award;

g.    Attorney's fees and costs pursuant to 42 U.S.C. § 1988, SMC 14.04.185(D), and any other applicable basis for an award of fees and costs; and

h.    Any further and additional relief that the Court deems just and equitable.

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722

DATED this 1st day of August, 2022.

MBE LAW GROUP PLLC


By:＿＿＿*s/ David C. Martin*＿＿＿＿＿
David C. Martin, WSBA No. 38325
By:＿＿＿*s/ Lisa Burke*＿＿＿＿＿＿
Lisa Burke, WSBA No. 42859
1700 Seventh Ave., Suite 2100
Seattle, WA 98101
Telephone: (206) 400-7722
Fax: (206) 400-7742
Email:  dmartin@mbelg.com
Email:  lburke@mbelg.com
Attorneys for Plaintiff Ani Geragosian

MBE LAW GROUP PLLC
1700 Seventh Ave, Suite 2100
Seattle, Washington 98101
Tel: 206.400.7722